UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CASSANDRA BRANDON | CIVIL ACTION |
| VERSUS | NO. 16-13747 |
| EATON GROUP ATTORNEYS, LLC | SECTION "R" (1) |

## ORDER AND REASONS

Dr. Cassandra Brandon sued Eaton Group Attorneys, LLC, alleging that a debt collection letter sent by Eaton Group violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Louisiana Unfair Trade Practice and Consumer Protection Act, LA. Rev. Stat. § 51:1401-18. Eaton Group moves for summary judgment, and argues that its letter offends neither statute as a matter of law. For the following reasons, the Court denies Eaton Group's motion.

### I.   BACKGROUND

On May 6, 2016, Eaton Group Attorneys, LLC, as the representative of National Collegiate Student Loan Trust 2007-1, filed a petition against Dr. Brandon in the 24th Judicial District Court for the Parish of Jefferson.[1]  In

---

[1]   R. Doc. 9-4 at 3.

its petition, the Student Loan Trust alleged that Dr. Brandon had defaulted on a debt, and sought $41,115.13, plus accrued interest of $4,998.37, additional interest at the rate of 4% from the date of judgment, and costs.[2]

On or around June 3, 2016, Dr. Brandon received a letter from Eaton Group concerning the lawsuit and her alleged debt.[3] The subject line of the letter described it as a "REQUEST FOR PAYMENT ARRANGEMENTS."[4] The letter stated:

> Dear CASSANDRA PLUMMER:[5]
>
> If you would like to explore a voluntary repayment plan, then please provide the requested information. The debt will need to be acknowledged through the attached consent judgment. Please return these forms as soon as possible. This is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.
>
> > Teressa Cooper
> > Legal Assistant[6]

The letter also included a form for Dr. Brandon to provide information—including address, social security number, and employer's contact information—for both Dr. Brandon and her spouse.[7]

---

[2] *Id.*
[3] R. Doc. 9-2 at 2; R. Doc. 8-2 at 4-5.
[4] R. Doc. 8-2 at 4.
[5] Plummer is Dr. Brandon's maiden name.
[6] R. Doc. 8-2 at 4.
[7] *Id.*

2

Attached to the letter was a partially completed consent judgment[8] and a copy of the petition in the Jefferson Parish case.[9] The consent judgment stated:

> IT IS ORDERED, ADJUDGED, AND DECREED that judgment be rendered in favor of the Plaintiff, NATIONAL COLLEGIATE LOAN TRUST 2007-1, and against the defendant, CASSANDRA PLUMMER (SSN []), in the full sum of $41,115.13, together with accrued interest of $4,998.37, and additional interest of 4% from date of judgment, and for all costs of these proceedings, subject to a credit of $.00.[10]

The consent judgment had already been signed by a representative of the Eaton Group.[11]

In her complaint, Dr. Brandon alleges that this letter "was deceptive and misleading as it attempted to trick [her] into signing a consent judgment by promising a voluntary repayment plan."[12] She brings claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Louisiana Unfair Trade Practice and Consumer Protection Act (LUTPA), LA. Rev. Stat. § 51:1401-18. The Eaton Group now moves for summary judgment, arguing that the letter it sent to Dr. Brandon was non-deceitful as a matter of law.

---

8   *Id.* at 5.
9   *Id.* at 2.
10  *Id.* at 5.
11  R. Doc. 9-3 at 2.
12  R. Doc. 1 at 5.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); see also *Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

4

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

### III. DISCUSSION

Eaton Group moves for summary judgment on both Dr. Brandon's FDCPA claims and her LUTPA claim. The Court considers each in turn.

#### A. FDCPA

The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector"[13] can make with a debtor. *See* 15 U.S.C. § 1692(a). Section 1692e of the law prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Similarly, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Congress "clearly intended the FDCPA to have a broad remedial scope," and the law "should therefore be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (quoting *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013)).

In considering whether a debt collection letter violates these provisions, the Court views the letter from the perspective of "an

---

[13] The Eaton Group does not appear to contest that it qualifies as a debt collector under the FDCPA.

6

unsophisticated or least sophisticated" consumer. *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). Such a consumer is assumed to be "neither shrewd nor experienced in dealing with creditors." *Id.* Still, "we do not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Id.* (internal quotations and modifications omitted). A collection letter is misleading or deceptive "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Gomez v. Niemann & Heyer, L.L.P.*, No. 16-119, 2016 WL 3562148, at *5 (W.D. Tex. June 24, 2016) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996)); *see also Gonzales v. Arrow Fin. Servs. LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3rd Cir. 2008). In a suit seeking statutory damages, the plaintiff need not prove that she was actually misled by the letter. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997).

The Court finds that the letter plaintiff received was misleading because an unsuspecting debtor, seeking only to "explore a voluntary repayment plan,"[14] could be fooled into executing the consent judgment without knowledge of the consequences. Specifically, an unsophisticated debtor may not know that the consent judgment will serve to waive

---

14   R. Doc. 8-2 at 4.

7

potentially valid defenses and may facilitate a wage garnishment order. Plaintiff alleges that defendant did not intend to use the consent judgment for a voluntary repayment plan, but rather to enforce involuntary repayment. If a repayment plan is "explore[d]," but no repayment plan is actually agreed to, the debtor is still bound by the acknowledgement and consent judgment. This follows because the letter could be read to mean the debtor is receiving only the right to "explore" an unspecified repayment plan by signing the acknowledgment and consent judgment. Under these circumstances, the debtor has to sign the consent judgment and acknowledge the debt before he even knows the terms of the payment plan to be "explore[d]." Unsophisticated consumers may be unaware that they will have no leverage to negotiate a payment plan because they will be bound by the acknowledgement and consent judgment even if the plan offered is never agreed to. Defendants' argument that the letter expresses their purpose not to enforce the consent judgment if plaintiff adheres to an agreed payment plan is not supported by the language of the letter.

The Fifth Circuit's recent decision in *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016), is instructive in evaluating Dr. Brandon's claim. In *Daugherty*, the court found that allegations concerning a collection letter that contained an offer to "settle" a time-barred

8

debt stated a claim for deceptive and misleading practices under the FDCPA. In deciding the case, the Fifth Circuit quoted approvingly from similar cases in the Sixth and Seventh Circuits. *Id.* at 511-12. Those circuits both found that, because the offer to "settle" a time-barred debt could fool an unsuspecting debtor into reviving the barred debt—and thereby place the debtor in a worse position—letters containing such offers and no disclosure of the associated risk may be misleading. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) (letters could be misleading, in part, because "a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount"); *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 399 (6th Cir. 2015) (partial payment "exposes a debtor to substantial new risk" and therefore "[w]ithout disclosure, a well-meaning debtor could inadvertently dig herself into an even deeper hole."). Agreeing with these cases, the Fifth Circuit held that "a collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA." *Daugherty*, 836 F.3d at 513.

Here, as in *Daugherty*, *McMahon*, and *Buchanon*, Eaton Group's letter invites the consumer to "explore" a voluntary repayment plan, but because Eaton Group's offer requires the consumer to "acknowledge" the debt and execute the attached consent judgment to even try to negotiate a voluntary repayment plan, a "well-meaning debtor" seeking to negotiate a payment plan "could inadvertently dig herself into an even deeper hole." *Daugherty*, 836 F.3d at 513 (quoting *Buchanan*, 776 F.3d at 399). Specifically, the consumer could unknowingly waive potential defenses, and subject herself to wage garnishment, and this could occurred even if no repayment plan is ultimately agreed to. These are substantial "possible pitfalls," *id.*, and the letter evinces no attempt at disclosure. Accordingly, drawing all reasonable inferences in favor of Dr. Brandon, the Court cannot find that Eaton Group's letter is neither misleading nor deceptive as a matter of law. Eaton Group's portrayal of the letter as a settlement offer does not disturb this conclusion. *See Goswami*, 377 F.3d at 496 ("A collection agency may offer a settlement; however, it may not be deceitful in the presentation of that settlement offer . . . .").

### B. LUTPA

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev.

Stat. § 51:1405(A). "[A] practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Rogers v. Brooks*, 122 F. App'x 729, 733 (5th Cir. 2004) (quoting *Jarrell v. Carter*, 577 So.2d 120, 123 (La. App. 1 Cir.1991). A practice is deceptive "when it amounts to fraud, deceit, or misrepresentation." *Mixon v. Iberia Surgical, L.L.C.*, 956 So. 2d 76, 80 (La. App. 3 Cir. 2007). A practice need not be *both* unfair and deceptive to fall under LUTPA, either will suffice. *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 763 (La. App. 2 Cir 1993). Determination of whether a particular practice offends LUTPA is largely left to the courts, and is to be determined on a "case-by-case basis." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

The Court finds that summary judgment under LUTPA is inappropriate for the same reasons as the FDCPA. As noted, Eaton Group's conduct could be deemed a deceptive attempt to fool an unsuspecting debtor seeking only to explore a voluntary payment plan into waiving valid defenses and subjecting herself to wage garnishments. Whether this conduct offends LUTPA is a question of fact, best suited for the jury. *SnoWizard, Inc. v. Robinson*, 897 F. Supp. 2d 472, 488 (E.D. La. 2012) ("[T]his claim should be sent to a jury to determine if SnoWizard's behavior implicated LUTPA, and

therefore SnoWizard's motion for summary judgment on this issue is denied."); *see also Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 801 (E.D. La. 2013) (granting default judgment to plaintiff alleging debt collection practices in violation of LUTPA).

To resist this conclusion, Eaton Group argues that Louisiana courts have ruled attorneys immune to LUTPA. The Court finds that Eaton Group's only supporting case, *Thibaut, Thibaut, Garrett & Bacot v. Smith & Loveless, Inc.*, 576 So. 2d 532 (La. App. 1 Cir. 1990), is distinguishable. *Loveless* concerned whether the legislature or Supreme Court had authority to regulate how attorneys collect legal fees *from their own clients*. It does not stand for the more sweeping proposition that, by gaining admission to the Louisiana bar, a person may immunize himself from LUTPA entirely. *See Reed v. Allison & Perrone*, 376 So. 2d 1067, 1069 (La. App. 4 Cir. 1979) (attorney advertising may be regulated under LUTPA).

## IV. CONCLUSION

For the foregoing reasons, Eaton Group's motion for summary judgment is DENIED.

New Orleans, Louisiana, this __24th__ day of January, 2017.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE